FILED

2011 JUN -3  PM 4: 34

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| DEAN DAVENPORT, | § |
| *Plaintiff,* | § |
| | § |
| v. | § |
| | § |
| YELLOW TAIL G-1, LLC, | § |
| RICHARD AZAR, Individually, and | § |
| DONNIE SEAY, Individually | § |
| | § |
| *Defendants.* | § |

S A 11 C A 0 440 OG

CIVIL NO. _____

## COMPLAINT

Plaintiff Dean Davenport ("Davenport") complains of Defendants Yellow Tail G-1, LLC

("Yellow Tail"), Richard Azar, and Donnie Seay, as follows:

### I.

### *PARTIES*

1.      Plaintiff Dean Davenport is an individual who resides in Boerne, Kendall County,

Texas.

2.      Defendant Yellow Tail is a Delaware limited liability company having its principal

place of business in San Antonio, Texas.

3.      Defendant Richard Azar is an individual who resides in San Antonio, Texas.

4.      Defendant Donnie Seay is an individual who resides in San Antonio, Texas.

## II.

### *JURISDICTION AND VENUE*

5.      Subject matter jurisdiction is vested in this court pursuant to 28 U.S.C. § 1331, because Dean Davenport's claims arise under various Federal Aviation Regulations ("FARs"), as described in detail below.  Accordingly, these claims arise under laws of the United States.

6.      This court has personal jurisdiction over Yellow Tail because its principal place of business is in Texas.

7.      The court has personal jurisdiction over Richard Azar and Donnie Seay because they are residents of Texas.

8.      Pursuant to 28 U.S.C. § 1391, venue is proper in the San Antonio division of the Western District of Texas because:

(1)     a substantial part of the events or admissions giving rise to Davenport's claim occurred within the San Antonio Division of the Western District of Texas;

(2)     All defendants reside in the San Antonio Division of the Western District of Texas.

## III.

### *RELEVANT FACTS*

9.      This case involves an aging business jet, a 1974 Gulfstream Aerospace G-II bearing Federal Aviation Administration ('FAA") Registration Number N180AR (the "Aircraft").  At issue is the enforceability under applicable FARs of three charter agreements involving the Aircraft, and a Memorandum of Agreement incorporating such charter agreements (the "Memorandum").

10.    Defendant Yellow Tail is owned by Richard Azar and Donnie Seay. In 2003, Yellow Tail acquired the Aircraft. In 2010, the two engines on the Aircraft required overhaul. To save money on the overhaul costs, Yellow Tail sent the engines to South America for repair.

11.    In mid-2010 the engines were returned to Ellington Field in Houston, and reinstalled on the Aircraft. On its post-overall maiden flight out of Ellington Field, however, during takeoff one of the engines began losing parts, and Ellington Tower advised the pilot that flames and parts were exiting the rear of the engine. Because the Aircraft was beyond the speed at which a takeoff must be continued despite engine failure, the captain continued the flight, declared an emergency, and landed the Aircraft safely at Hobby Airport.

12.    The estimated cost to repair the damaged engine was $350,000-$450,000. Yellow Tail elected not to repair the damaged engine, and it remains unrepaired to this day.

13.    After the Aircraft sat idle for a period of time, in late October 2010 Yellow Tail executed a charter agreement with Muy Brands, LLC and its owner James Bodenstedt (the "Bodenstedt Charter Agreement"). Exhibit 1. Under the terms of that document, Bodenstedt paid $8000 per month to cover the costs of a rental engine to enable the Aircraft to fly. In exchange, he received eight hours of flight time per month on a "dry" basis (i.e. Mr. Bodenstedt paid flight crew and fuel expenses).

14.    The operational and maintenance costs for a 1974 G-II are substantial – amounting to several hundred thousand dollars per year. Yellow Tail and its owners desired to sell charter time on the Aircraft, sell the Aircraft itself, or do both.

15.    In December 2010, a mutual acquaintance of Yellow Tail and Dean Davenport advised Mr. Davenport that the Aircraft was available for a charter flight to Las Vegas, Nevada, that Mr. Davenport desired to make.

16.     Yellow Tail sold the charter flight to Mr. Davenport, and he liked the Aircraft. But Mr. Davenport had never owned or operated any airplane, and did not realize that charter flights of this type were patently illegal under federal aviation law. Yellow Tail has never held an FAA Part 135 certificate to operate a charter operation or to fly charter flights for hire for compensation.

17.     In January 2011, Mr. Davenport and his wife were stranded in St. Thomas when their commercial airline flight was cancelled due to closure of the airport following an accident. Mr. Davenport again chartered a flight on the Aircraft to pick him and his wife up in St. Thomas and return them to San Antonio.

18.     Following this flight from St. Thomas, Yellow Tail expressed an interest in selling the Aircraft and Mr. Davenport expressed an interest in buying it. The owners of Yellow Tail also presented to Mr. Davenport an investment opportunity in certain oil and gas properties in Oklahoma.

19.     In early February 2011, Mr. Davenport attended a meeting with Richard Azar, Donnie Seay, and several other persons concerning the Oklahoma energy prospect. At the conclusion of such meeting, Richard Azar took Mr. Davenport into a separate room and requested that he sign a document styled Memorandum of Agreement (the "Memorandum"), a copy of which is attached as Exhibit 2. Mr. Davenport had not previously seen this document, nor any interim draft of it.

20.     The Memorandum is a two and one-page document that purports to establish three charter arrangements concerning the Aircraft, plus a deferred contract of sale. For the reasons set forth below, all of the charter arrangements are illegal under federal aviation law, and are so inextricably intertwined with the deferred sales contract as to render the entire document unenforceable.

21.     Paragraphs (1) and (2) of the Memorandum purport to establish a charter arrangement for the time period from February 4, 2011 until May 31, 2011 (the "Interim Charter Agreement").

During February 2011, Davenport was to pay $14,830 to charter the Aircraft for an unspecified number of hours. During March, April, and May 2011, this payment increased to $44,860. This Interim Charter Agreement is illegal under federal law, because Yellow Tail holds no Part 135 certificate.

22.     Paragraph (3) of the Memorandum references the $8000 engine lease, and states that James Bodenstedt "pays this cost in exchange for the right to use the airplane." No reference is made to the Bodenstedt Charter Agreement, nor was Dean Davenport aware of such agreement at the time he executed the Memorandum. Paragraph (3) is drafted so poorly that it is impossible to glean from its terms whether an assignment of the Bodenstedt Charter Agreement is intended ("Davenport will continue to honor this right"), or whether Davenport would be required to negotiate a new charter arrangement with Mr. Bodenstedt ("the parties will agree upon an hourly rate ... and this amount will be deducted against the $8,000 prepayment by Bedenstedt"). If an assignment was contemplated, paragraph (3) fails for three reasons: (a) the Bodenstedt charter agreement is itself illegal under Part 135; (b) paragraph 16 of that document prohibits assignment; and (c) Dean Davenport has no Part 135 certificate, and thus cannot continue the charters to Mr. Bodenstedt.

23.     Paragraph (6) of the Memorandum purports to establish yet a third illegal charter arrangement (the "Permanent Charter"). Under paragraph (6), Richard Azar and Donnie Seay would be permitted to charter, without limitation, the Aircraft for an unspecified number of hours at an hourly rate of to be agreed upon, but falling within a range of $1,000 to $1,500. For the reasons explained above, this charter arrangement would also violate federal law, because Mr. Davenport holds no Part 135 certificate.

## VI.

### COUNT 1 – DECLARATORY RELIEF REGARDING 14 CFR

24.     Pursuant 28 U.S.C. § 2201, Dean Davenport seeks a declaratory judgment that the charter arrangements contemplated under paragraphs (1), (2), (3), and (6) of the Memorandum violate Part 135 of the Federal Aviation Regulations, appearing at 14 CFR Part 135.

### COUNT 2 – DECLARATORY RELIEF – 14 CFR PART 91.23

25.     Part 91.23 is commonly referred to as the Federal Aviation "Truth in Leasing" requirement.  Part 91.23(c) states as follows:

> (c) No person may operate a large civil aircraft of U.S. registry that is subject to a lease or contract of conditional sale to which paragraph (a) of this section applies, unless --
>
> (1) The lessee or conditional buyer, or the registered owner if the lessee is not a citizen of the United States, has mailed a copy of the lease or contract that complies with the requirements of paragraph (a) of this section, within 24 hours of its execution, to the Aircraft Registration Branch, Attn: Technical Section, P.O. Box 25724, Oklahoma City, OK 73125;
>
> (2) A copy of the lease or contract that complies with the requirements of paragraph (a) of this section is carried in the aircraft. The copy of the lease or contract shall be made available for review upon request by the Administrator, and
>
> (3) The lessee or conditional buyer, or the registered owner if the lessee is not a citizen of the United States, has notified by telephone or in person the FAA Flight Standards district office nearest the airport where the flight will originate. Unless otherwise authorized by that office, the notification shall be given at least 48 hours before takeoff in the case of the first flight of that aircraft under that lease or contract and inform the FAA of --
>
> (i) The location of the airport of departure;
>
> (ii) The departure time; and
>
> (iii) The registration number of the aircraft involved.

26.    None of the foregoing filing requirements have been met concerning the Interim Charter Agreement or the Permanent Charter Agreement. Nor do such agreements contain the disclosure language required by Part 91.23(a), as follows:

(a) Except as provided in paragraph (b) of this section, the parties to a lease or contract of conditional sale involving a U.S.-registered large civil aircraft and entered into after January 2, 1973, shall execute a written lease or contract and include therein a written truth-in-leasing clause as a concluding paragraph in large print, immediately preceding the space for the signature of the parties, which contains the following with respect to each such aircraft:

(1) Identification of the Federal Aviation Regulations under which the aircraft has been maintained and inspected during the 12 months preceding the execution of the lease or contract of conditional sale, and certification by the parties thereto regarding the aircraft's status of compliance with applicable maintenance and inspection requirements in this part for the operation to be conducted under the lease or contract of conditional sale.

(2) The name and address (printed or typed) and the signature of the person responsible for operational control of the aircraft under the lease or contract of conditional sale, and certification that each person understands that person's responsibilities for compliance with applicable Federal Aviation Regulations.

(3) A statement that an explanation of factors bearing on operational control and pertinent Federal Aviation Regulations can be obtained from the nearest FAA Flight Standards district office.

27.    Accordingly, Dean Davenport seeks a declaratory judgment that paragraphs (1), (3), and (6), of the Memorandum are illegal and unenforceable under 14 CFR 91.23.

### *COUNT 3 – DECLARATORY JUDGMENT – UNENFORCEABILITY OF MEMORANDUM*

28.    Because the central components of the Memorandum are illegal under federal law, Dean Davenport invokes the supplement jurisdiction of the court and requests a declaratory judgment that the remainder of the Memorandum is unenforceable.

**V.**

### *CONCLUSION*

Plaintiff, Dean Davenport respectfully requests that the defendants Yellow Tail G-1, LLC, Richard Azar, and Donnie Seay be cited to answer and appear herein, and that upon final hearing or trial a judgment be entered in favor of Dean Davenport and against such defendants granting the following relief:

(a)    declaratory relief as requested.

(b)    attorney fees;

(c)    costs of court; and

(d)    general relief.

Dated: June 3, 2011

Respectfully submitted,

**JOHNSON, RIAL & PARKER, P.C.**

By: _____
    Hamilton Rial
    State Bar No. 16824980
    811 Barton Springs Road, Suite 730
    Austin, Texas 78704
    Telephone No. (512) 322-8118
    Facsimile No. (512) 697-0039


**ATTORNEYS FOR PLAINTIFF**
**DEAN DAVENPORT**